1

2

3

4

5

6

7

8

9          **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

11

12   ALICIA R. WILLIAMS,            )    Case No. CV 13-04217-AS
                                    )
13              Plaintiff,          )    **MEMORANDUM OPINION**
                                    )
14      v.                          )
                                    )
15   CAROLYN W. COLVIN,             )
     Acting Commissioner of the    )
16   Social Security Administration,)
                                    )
17              Defendant.          )
     ───────────────────────────── )
18

19                      **PROCEEDINGS**

20      On June 14, 2013, Plaintiff, proceeding <u>pro se</u>, filed a Complaint

21   seeking review of the denial of her application for Disability Insurance

22   Benefits.  (Docket Entry No. 3).  The parties have consented to proceed

23   before the undersigned United States Magistrate Judge.  (Docket Entry

24   Nos. 14, 24).  On March 27, 2014, Defendant filed an Answer along with

25   the Administrative Record ("AR").  (Docket Entry Nos. 13-14).  On

26   October 10, 2014, Plaintiff filed a Motion for Summary Judgment (Docket

27   Entry No. 23) ("Plaintiff's Motion"), and on November 7, 2014, Defendant

28   filed a Motion for Summary Judgment (Docket Entry No. 26) ("Defendant's

     Motion").

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Case Management Order," filed June 18, 2013 (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 11, 2009, Plaintiff, formerly employed as a biologist, a customer service representative for a pet store, and a substitute para-educator (see AR 38, 179, 187), filed an application for Disability Insurance Benefits. On May 27, 2010, Plaintiff filed an application for Supplemental Security Income. Both applications alleged an inability to work since February 16, 2009. (See AR 22, 167-68). On September 22, 2010, the Administrative Law Judge ("ALJ"), Edward C. Graham, heard testimony from Plaintiff, Plaintiff's mother, and vocational expert Randi Hetrick. (See AR 36-55). On October 4, 2011, the ALJ issued a decision denying Plaintiff's applications. (See AR 22-29). After determining that Plaintiff had severe impairments -- affective disorder and vertigo (AR 24) --, the ALJ found that Plaintiff had the residual functional capacity[1] to perform a full range of work at all exertional levels, but had certain nonexertional limitations, including avoiding exposure to unprotected heights and moving machinery and mild limitations in her capacities to understand and remember tasks, sustain concentration and persistence, socially interact with the general public, and adapt to workplace changes. (AR 24-28). After finding that Plaintiff was unable to perform her past relevant work as a biologist (AR 28), the ALJ found that jobs existed in significant numbers in the

---

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

1   national economy that Plaintiff could perform, and therefore found that
2   Plaintiff was not disabled within the meaning of the Social Security
3   Act. (AR 28-29).
4
5   Plaintiff requested that the Appeals Council review the ALJ's
6   decision. (AR 17-18). The request was denied on February 4, 2014. (AR
7   1-4). The ALJ's decision then became the final decision of the
8   Commissioner, allowing this Court to review the decision. See 42 U.S.C.
9   §§ 405(g), 1383(c).
10
11   **PLAINTIFF'S CONTENTIONS**
12
13   Plaintiff alleges that (1) the ALJ erred in failing to properly
14   evaluate the testimony of the vocational expert; and (2) the
15   administrative record improperly contains medical records which are
16   dated before the date that Plaintiff's illness began and/or which
17   provided a mis-diagnosis, and fails to contain certain medical records.
18   (See Plaintiff's Motion at 2-11).[2]
19
20   **DISCUSSION**
21
22   **A.   The ALJ Properly Evaluated the Vocational Expert's Testimony**
23
24   Plaintiff asserts that the ALJ improperly ignored the vocational
25   expert's testimony that Plaintiff could not perform the duties of her
26   past job as a biologist, could not work the light to medium level jobs
27
28   _____
        [2]   The Court will address the medical records Plaintiff has
    discussed. The Court will not address any medical records Plaintiff has
    not discussed (see Defendant's Motion at 14).

3

listed during the hearing, and could not work if she had to lie down two or more times a day.   (See Plaintiff's Motion at 3-5).   Defendant asserts that the ALJ properly evaluated the vocational expert's testimony.   (See Defendant's Motion at 6-7).

At the administrative hearing, the following exchange took place between the ALJ and the vocational expert:

> Q.  Thirty-three.  I'm sorry, 33, and twelfth grade education. Could do heavy work.  Standing, walking six hours out of eight hours.  Sitting, six hours out of eight hours.  Should avoid heights and moving machinery, and would have mild mental limitations for understanding and remember tasks or sustained concentration and persistence, or socially interacting with the general public and adapting to workplace changing using a regressive mental limitation scale slight to moderate to moderate to marked.  Could she perform her past relevant work?
> A.    I think based on the non-exertional limitations she might have difficulty working as a biologist.

(AR 51).

Contrary to Plaintiff's assertion, the ALJ did not ignore the vocational expert's testimony.  Indeed, the ALJ specifically found that Plaintiff could not perform any past relevant work, stating:   "The claimant has past relevant work as a biologist (light exertion, skilled).   The vocational expert testified the claimant is unable to perform past relevant work." (AR 28).

When asked what entry level jobs such a hypothetical person could perform, the vocational expert testified that such a person could perform the following: medium work,[3] such as hand packager and laundry worker; light work,[4] such as office helper and cashier II (cash register); and sedentary work, such as order clerk.  (See AR 51-53). The vocational expert testified that a person who was markedly limited in the mental functions described in the hypothetical could not perform any of those jobs.  (AR 53).  The vocational expert also testified that a person who had to lie down two or three times a day for an hour each time would not be able to perform any of those jobs.  (AR 53-54).

There is nothing in the record indicating that Plaintiff had marked (as opposed to mild) mental limitations in the areas highlighted by the ALJ (i.e., understanding and remembering tasks, sustained concentration and persistence, socially interacting with the general public, adapting to workplace changing).  (See AR 26-27, noting there was "no record of [a] full mental status examination" and summarizing the consultative examiner's evaluations, including the August 8, 2009 report by Neda Javaherian, M.D. (psychiatrist) [AR 330-34], the March 2, 2011 report by Faribi Vesali, M.D. (physical medicine and rehabilitation) [AR 389-98], and the March 13, 2011 report by Raymond Yee, M.D. (psychiatrist) [AR 413-17]).

---

[3]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§  404.1567(c) and 416.967(c).

[4]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Moreover, to the extent that Plaintiff and/or Plaintiff's mother testified that Plaintiff was markedly mentally limited in the above areas (see e.g., AR 39-48, AR 198-213 [Plaintiff's Function Report, dated June 20, 2009, and Plaintiff's Mother's Function Report, dated June 20, 2009]), and/or that Plaintiff and/or Plaintiff's mother testified that Plaintiff had to lie down for a couple of hours two or three times a day (see AR 46-49), the ALJ properly found that such testimony was not credible based on inter alia: (1) the inconsistencies between Plaintiff's statements to the consultative examiners on March 2, 2011 and on March 13, 2011 concerning her daily activities (see AR 27, citing AR 389-98, 413-17), see Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (one factor in evaluating credibility is a claimant's prior inconsistent statements concerning the symptoms); (2) the inconsistency between Plaintiff's complaints and the level of treatment Plaintiff received (see AR 27, noting: AR 282-83 [Plaintiff's statement on September 9, 2008 that "[f]or headache management she has been taking aspirin on an as needed basis with good relief"], AR 283, 313, 291 [Although Plaintiff stated she does not take certain medications prescribed to her based on her concerns about side effects, Plaintiff had only complained of a side effect (sleepiness from Meclizine) on one occasion]), see Social Security Ruling 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1008 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."); and (3) the lack of objective medical evidence supporting Plaintiff's alleged limitations (see AR 28, 250-327, 330-34, 389-98, 413-17), see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); <u>Morgan v. Commissioner</u>, 169 F.3d 595, 599-60 (9th Cir. 1999).

Since the ALJ properly found that Plaintiff did not suffer marked mental limitations and did not need to lie down for an hour two or three times a day, the ALJ was not required to consider the vocational expert's testimony concerning those limitations.   See <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164-65 (9th Cir. 2001)("An ALJ is free to accept or reject restrictions in a hypothetical question if they were not supported by substantial evidence."); <u>Magallanes v. Brown</u>, 881 F.2d 747, 756 (9th Cir. 1989)("The vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.").

**B.    The Inclusion of Certain Kaiser Permanente Records in the Administrative Record was Not Improper**

Plaintiff asserts that certain Kaiser Permanente records were improperly included in the administrative record.   (<u>See</u> Plaintiff's Motion at 6-8).   Defendant asserts that such records were properly included in the administrative record.   (<u>See</u> Defendant's Motion at 8-9).

Plaintiff claims that a November 6, 2007 Progress Note concerning Plaintiff's allergies (see AR 251) and a March 12, 2008 Progress Note concerning Plaintiff's headache (see AR 266) were improperly included in the administrative record because her disability did not begin until August 2008. Plaintiff further claims that a June 10, 2009 Progress Note concerning Plaintiff's flu (see AR 320) was improperly included in the administrative record because it is not relevant to the issue of Plaintiff's disability. Plaintiff further claims that August 3, 2008 and February 24, 2009 Progress Notes, which indicate that Plaintiff was diagnosed with Benign Paroxysmal Positional Vertigo (see AR 261-65, 308-12, 360-62), were improperly included in the administrative record because the diagnosis was wrong in that Plaintiff's vertigo "never went away." Plaintiff further claims that a March 10, 2009 Progress Note, which indicates that Plaintiff was diagnosed with cervical vertigo (see AR 307-08), was improperly included in the administrative record because the diagnosis was wrong and was based on the Plaintiff's own statements about a possible cause of her ailment. (See Plaintiff's Motion at 6-8).

Since Plaintiff did not expressly state in her June 11, 2009 application for Disability Insurance Benefits when her disability began (see AR 167-68 ["I became unable to work because of my disabling condition on February 16, 2009."]), and since Plaintiff stated in a Disability Report that she began having vertigo daily in November 2008 (see AR 178), the inclusion of the November 6, 2007 and March 12, 2008 Progress Notes in the administrative record was proper. See 20 C.F.R. § 404.1512(d) ("Before we make a determination you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . unless you

8

say that your disability began less than 12 months before you filed your application.").

Even assuming <u>arguendo</u> the November 6, 2007, March 12, 2008, and June 10, 2009 Progress Notes were improperly included in the administrative record, any error was harmless.   <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008)(an ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'"); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").   The ALJ did not separately discuss any of those Progress Notes (<u>see</u> AR 25-26), and those Progress Notes did not have any effect on the ALJ's finding that Plaintiff was disabled.

While Plaintiff takes issue with the inclusion in the administrative record of the August 3, 2008, February 24, 2009 and March 10, 2009 Progress Notes, her complaint is really with the diagnoses contained therein.   The inclusion of such records was not improper, and the ALJ properly relied on them.   <u>See</u> 20 C.F.R. §§ 404.1529(a), 416.929(a).

**C.   Remand is Not Warranted Based on the Absence of Certain Kaiser Permanente Records from the Administrative Record**

Plaintiff asserts that certain Kaiser Permanente records containing medical tests resulting in abnormalities were not included in the administrative record. (<u>See</u> Plaintiff's Motion at 8-10).   Defendant asserts that the results found in those records were included in the

administrative record and/or were considered. (See Defendant's Motion at 9-10).

Plaintiff has submitted two Kaiser Permanente records (or portions thereof) which purportedly are not included in the administrative record: (1) a January 13, 2009 report of a Vestibular Autorotation Test ("VAT") administered by audiologist Tracy Crocker (see Plaintiff's Motion, Exhibits at 60-61, 63); and (2) a May 4, 2009 Progress Note by audiologist Bonnie Rettgers (see Plaintiff's Motion, Exhibits at 53). Plaintiff claims that "these medical test results show enough detail, providing proof of abnormalities in the Plaintiff's vestibular organs (eyes and ears)." According to Plaintiff, there is only one record in the administrative record showing an abnormality (see AR 328 [July 16, 2009 Case Analysis Report noting "4/09 VAT-Equitest: horizontal phase low, vertical gain low. A:disequilibrium."]. (See Plaintiff's Motion at 8).

Preliminarily, the Court lacks jurisdiction to reverse the Commissioner's decision based on evidence that is not part of the administrative record.  See 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); see also Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) ("Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings.").

However, a case may be remanded for the consideration of new evidence if the evidence is material and good cause exists for the absence of the evidence from the record of the prior proceeding. <u>See</u> 42 U.S.C. § 405(g); <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001); <u>Sanchez v. Sec'y of Health and Human Servs.</u>, 812 F.2d 509, 511-12 (9th Cir. 1987). "If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985). For new evidence to be "material," the court must find that, had the Commissioner considered this evidence, the decision might have been different. <u>Clem v. Sullivan</u>, 894 F.2d 328, 332 (9th Cir. 1990); <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1380 (9th Cir. 1984)("[E]vidence is sufficiently material to require a remand[ ] only where there is a *reasonable possibility* that the new evidence would have changed the outcome of the . . . determination. . . .")(citation and internal quotation marks omitted); <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1409 (9th Cir. 1986). The new evidence must be probative of the claimant's condition as it existed at or before the time of the disability hearing. <u>Sanchez</u>, <u>supra</u>; <u>see</u> <u>Key</u>, <u>supra</u>, (9th Cir. 1985)("At a minimum, such evidence must be probative of mental or physical impairment.").

Contrary to Plaintiff's assertion, the results of the May 4, 2009 audiology examination (namely, a unilateral weakness of 30% in the left ear [significant], and a directional preponderance of 20% to the left ear [not significant], <u>see</u> Plaintiff's Motion, Exhibits at 53) were already included in the administrative record. (<u>See</u> AR 322).

Moreover, Plaintiff has failed to show good cause for the absence of such evidence in the administrative record. <u>See</u> <u>Key</u>, <u>supra</u> ("Since Key failed to meet the 'good cause' requirement, we decline to remand the case for consideration of new evidence.").

**D.    Remand is Not Warranted Based On the Absence of 2008-2010 Kaiser Permanente, Antelope Valley Hospital, and Health Desert Health System Records from the Administrative Record**

Plaintiff asserts that certain 2009-2010 records from Kaiser Permanente, Antelope Valley Hospital, and Health Desert Health System were not included in the administrative record. (Plaintiff's Motion at 10). Defendant asserts that such records did not contain substantive medical evidence and/or would not have affected the ALJ's nondisability determination. (<u>See</u> Defendant's Motion at 10).

Plaintiff has submitted the following records: (1) Antelope Valley Hospital Consent and Conditions of Emergency Treatment forms and After Care Instructions (for Vertigo) dated February 15, 2009 (<u>see</u> Plaintiff's Motion, Exhibits at 9-22); (2) Kaiser Permanente Explanation of Benefits for ambulance transportation on February 15, 2009 and May 19, 2009 (<u>see</u> Plaintiff's Motion, Exhibits at 23-24); (3) High Desert Health System Detailed Patient Chart Summary Report (March 30, 2010 through April 5, 2010; June 29, 2010 through July 5, 2010) (<u>see</u> Plaintiff's Motion, Exhibits at 25-32); and (4) various Kaiser Permanente records, including: an August 3, 2008 After Visit Summary (Plaintiff was diagnosed with benign paroxysmal positional vertigo); instructions (for dizziness) after an August 30, 2008 visit; a September 5, 2008 After Visit Summary; a December 19, 2008 After Visit Summary; instructions

(for vertigo) after a December 20, 2008 visit; an April 13, 2009 After Visit Summary (Plaintiff was Diagnosed with disequilibrium, panic attack, migraine headache, and migraine [atypical]); a March 13, 2009 After Visit Summary (optometry); a September 25, 2009 After Visit Summary (Plaintiff was diagnosed with migraine headache and dizziness); a November 11, 2009 After Visit Summary (same diagnosis), and a December 16, 2009 After Visit Summary (Plaintiff was diagnosed with migraine headaches)(see Plaintiff's Motion, Exhibits at 33-52).

Plaintiff has failed to show good cause for the absence of such evidence from the administrative record.

Moreover, such evidence is not material to the ALJ's finding of nondisability. Plaintiff has not even attempted to argue materiality. The Antelope Valley Hospital forms simply reflect that Plaintiff sought emergency treatment on February 15, 2009 and was provided after care instructions for vertigo (see Plaintiff's Motion, Exhibits at 9-22). The first set of Kaiser Permanente records simply reflect that Plaintiff was transported by ambulance on February 15, 2009 and May 19, 2009 (see Plaintiff's Motion, Exhibits at 23-24). The High Desert Health System records simply reflect: (1) Plaintiff's visit on March 30, 2010 and her vital signs; and (2) Plaintiff's visit on June 29, 2010 for medication refills, and noted that she was doing better, that a psychiatrist had prescribed her Prozac, that the frequency of her headaches was less than before, and that she was not taking Fioricet because it caused sleepiness (see Plaintiff's Motion, Exhibits at 25-32). The second set of Kaiser Permanente records concerning various visits (see Plaintiff's Motion, Exhibits at 33-52) do not appear to contain new information

about Plaintiff's condition that would have impacted the ALJ's decision

**E.    Remand is Not Warranted Based on the Absence of Antelope Valley Wellness Center Records from the Administrative Record**

Plaintiff asserts that records from Antelope Valley Wellness and Enrichment Center ("AV Center") supporting her disability of depression was not included in the administrative record. (See Plaintiff's Motion at 10-11).  Defendant asserts that such records would not have been material to the ALJ's determination of nondisability. (See Defendant's Motion at 11-12).

Plaintiff has submitted the following records: (1) A December 14, 2010 letter from Criselda Abad Santos M.D. (psychiatrist) of the AV Center to Plaintiff's then-counsel (who represented Plaintiff in the underlying Social Security proceedings) which stated that Plaintiff had been treated there since May 4, 2010 and gave Plaintiff the following diagnosis: "Axis 1: 296.32 Major Depressive Disorder in partial remission", "Axis II: No diagnosis", "Axis III: migraines, vertigo", "Axis IV: social environment, occupation, access to health care," and "Axis V: GAF:60"[5]  (see Plaintiff's Motion, Exhibits at 65); (2) an AV Center Initial Assessment of Plaintiff dated May 4, 2010, stating an

---

[5]    A Global Assessment Functioning score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers) (American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (DSM-IV-TR), 34 (2000)).

"[T]he [GAF] score is used for treatment purposes and not for rating a person's ability to work." Deck v. Colvin, 2014 WL 7388792, *1 (9th Cir.).

14

admission diagnosis of Axis I: Major Depressive Disorder, Axis III: Migraine and Vertigo, Axis IV: Occupational, access to health care, and other psychosocial/environmental, and Axis V: GAF 60 (see Plaintiff's Motion, Exhibits at 66-71): (3) AV Center Brief Follow-Up Medication Support Service forms dated January 26, 2010, May 18, 2010, June 8, 2010, August 3, 2010, October 6, 2010, December 1, 2010 (all with the same diagnosis as the Initial Assessment) (see Plaintiff's Motion, Exhibits at 72-77, 85); (4) an AV Center Outpatient Medication Review dated May 12, 2010 (see Plaintiff's Motion, Exhibits at 78); (5) an AV Center Initial Medication Support Service dated May 12, 2010 (see Plaintiff's Motion, Exhibits at 79-82); (6) an AV Center Medication Log for May 12, 2010 and April 13, 2011 (see Plaintiff's Motion, Exhibits at 83); and (7) an AV Center Progress Note dated December 14, 2010 (see Plaintiff's Motion, Exhibits at 84).    Petitioner claims that such evidence shows she had been treated for depression and anxiety and depression since May 4, 2010, and therefore would have substantiated her claim of disability based on depression.  (See Plaintiff's Motion at 10).

Again, Plaintiff has failed to show good cause for the absence of such documents in the administrative record.

Moreover, such records would not have persuaded the ALJ to find her disabled based on depression.  In the May 4, 2010 Initial Assessment, Plaintiff reported no prior hospitalizations and no prior outpatient treatment for depression. (See Plaintiff's Motion, Exhibits at 66).  On August 3, 2010, Plaintiff reported just getting back from a one-month vacation, and Plaintiff's Major Depression Disorder was found to be in partial remission.  (See Plaintiff's Motion, Exhibits at 67).  On

October 6, 2010, Plaintiff reported that she felt the Prozac was starting to work, even for her migraine headaches, and that Plaintiff's adherence to medication was good. (See Plaintiff's Motion, Exhibits at 73). Finally, and most significantly, in a December 14, 2010 Progress Note, the author wrote that his or her goal was "[t]o inform client that psychiatrist is not willing to substantiate her claim for SSI. The author continued to write: "Contacted client by telephone to explain that there is a letter from another physician stating that she does not meet the criteria and further stating that the psychiatrists findings are in line with the former M.D. Client is diagnosed with Major Depressive Disorder in partial remission. Psychiatrist finds that client is responding well to treatment."). (See Plaintiff's Motion, Exhibits at 82). Consequently, such evidence is not material.

**F.    Remand is Not Warranted Based on the Absence of Two Neurological Reports from the Administrative Record**

Plaintiff asserts that the reports of two neurologists, Robert Baloh, M.D. and Greg Whitman, M.D., were not included in the administrative record. (See Plaintiff's Motion at 11-12). Defendant asserts that the error in including them in the administrative record was harmless. (See Defendant's Motion at 12-13).

Plaintiff has submitted the following records: (1) the June 9, 2009 report by Robert Baloh, M.D., of UCLA Medical Center Neurological Services (see Plaintiff's Motion, Exhibits at 16-17); and (2) the June 22, 2009 report and handwritten notes by Greg Whitman, M.D. (see Plaintiff's Motion, Exhibits at 19-22). Plaintiff claims that these

16

records show more evidence of her debilitating medical condition. (<u>See</u> Plaintiff's Motion at 11).

Dr. Baloh's June 9, 2009 report was based on his examination of Plaintiff on June 8, 2009. Dr. Baloh noted that audiometric testing had shown "normal pure tone hearing levels bilaterally," that two MRI scans of the brain and MR angiography of the head and neck were within normal limits, that past treatments and medications had not been particularly effective for symptoms, that she had starting taking nortriptyline 10 days earlier (even though it had been recommended in the past), and that Plaintiff currently was taking nortiptyline, meclizine (as needed), Motrin (as needed), and vitamin complex. (<u>See</u> Plaintiff's Motion, Exhibits at 16). Following a discussion about the neurological examination (<u>see</u> Plaintiff's Motion, Exhibits at 16-17), Dr. Baloh wrote the following summary:

> In brief, this 30-year old woman with a prior history of panic attacks and migraine headaches has developed recurrent vertigo initially intermittent from August 2008, but constant since November of 2008. Despite the chronic vertigo, she has not had any hearing loss and a recent audiogram showed normal pure tone hearing levels bilaterally. She does have some intermittent right ear symptoms including pain and pressure, but examination of the ears is completely normal. Furthermore, she has had MRI scans of the brain and MR angiography of the head and neck that were within normal limits. This type of recurrent vertigo is commonly seen in patients with migraine and patients can be extremely sensitive to motion so that they will not ride in an automobile. Within

families, panic disorder, depression, and migraine will run together in an autosomal dominant fashion.  The same medications are used to treat all of these disorders.  I agree with starting nortriptyline, and hopefully, we will be able to gradually increase the dose to at least 20 mg, although an average dose is more likely in the range of 40 to 60 mg at night.  I suggested that she increase the dose more slowly so that she will develop a tolerance to the sedation.  If she is not able to tolerate the nortriptyline, then I would consider a trial of fluoxetane again beginning with very low doses and gradually working up to the therapeutic range depending on her response and other potential side effects. Other selective serotonin reuptake inhibitors such as Celaxa and Lexapro might also be considered if side effects become a problem.  She can use meclizine on an as needed basis, but only on occasional basis.  I do not think that any other neurologic or otologic studies are indicated unless she should develop some new symptoms or signs.  (Plaintiff's Motion, Exhibits at 17).

In the June 22, 2009 report of his neurological evaluation, Dr. Whitman diagnosed Plaintiff with probable migraine vertigo.  (See Plaintiff's Motion, Exhibits at 19-20).  Dr. Whitman wrote the following comments:

Given that she has a history of migraine, has episodes of migraine symptoms that correlate with dizziness, at least in some instances, and so far has not been demonstrated to have another mechanism of dizziness, she would seem to meet the

working definition for migraine vertigo that has been published in the neurology literature. Therefore, I agree with the a trial of migraine prophylactic medications. She has been unable to tolerate higher doses of nortiptyline, which, however, may have provided some benefit. [¶] We agreed that she would continue taking nortriptyline at a low dose of 10 mg p.o. q.h.s. She will, in addition, begin taking another migraine prophylactic medication, verapamil (Calan) SR 18 mg one p.o q.d. (Plaintiff's Motion, Exhibits at 20).

Dr. Whitman advised Plaintiff to continue to do all the non-drug stuff she is doing, such as yoga, eating, drinking water, painting, and anything to lower stress. (See Plaintiff's Motion, Exhibits at 18).

Plaintiff has failed to show good cause for the absence of the two neurological reports from the administrative record.

Contrary to Defendant's assertion (see Defendant's Motion at 13), there is no indication that the Commissioner considered the two neurological reports. Nonetheless, even if the two neurological reports should have been included in the administrative record, the Court finds that any error in failing to include the reports was harmless. The two neurological reports would not affected the ALJ's findings that "there is no objective medical evidence to support the existence of any medically determinable cause for pain and that the claimant has mostly refused to take prescription pain medications and admits that aspirin is effective" and that precluding Plaintiff from work environments with unprotected heights or exposure to dangerous, moving machinery was a

sufficient measure to prophylactically deal with Plaintiff's dizziness (as opposed to her vertigo). (See AR 26). The ALJ was aware of Plaintiff's history of evaluations for headaches and vertigo, including the report of a Kaiser Permanente neurologist on May 27, 2009 (which was close in time to the dates of the two neurological reports). (See AR 25-26). Moreover, the fact that Plaintiff had been diagnosed with migraine associated vertigo was contained in the record. (See e.g., AR 374-75). Moreover, neither Dr. Baloh nor Dr. Whitman discussed any work limitations necessary for Plaintiff as a result of her vertigo. Indeed, it appears that they would not have imposed any work restrictions, based on the hopeful effectiveness of the recommended medications (see Plaintiff's Motion, Exhibits at 17 [stating "I do not think that any other neurologic or otologic studies are indicated unless she should develop some new symptoms or signs"], 20-21). Since the ALJ was aware of Plaintiff's vertigo, and since the two neurological reports do not provide evidence of functional limitations for Plaintiff, their absence from the administrative record is "inconsequential to the ultimate nondisability determination." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 27, 2015

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE